IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RAY CHRIS MOBLEY,
    Plaintiff,

vs.                                        Case No. 5:11cv202/RS/EMT

BAY COUNTY SHERIFF'S
OFFICE, et al.,
    Defendants.
_____/

## ORDER

        This cause is before the court on Plaintiff's civil rights complaint filed pursuant to 42 U.S.C. § 1983 (doc. 1).  Leave to proceed in forma pauperis has been granted (doc. 4).  Upon review of the complaint, it is evident that the facts as presented fail to state a claim against one or all of the named Defendants.  The court will therefore allow Plaintiff an opportunity to clarify his allegations in an amended complaint.

        Plaintiff lists five Defendants on the first page of the complaint form (Bay County Sheriff's Office ("BCSO"), Officer Frank Bailey, Officer Shaw, Officer Voras, and Sgt. Daniels), but he names the following seven Defendants in the "Defendants" section of the complaint form: BCSO; Sgt. Frank Bailey, at the Bay County Jail ("BCJ"); BCJ Sgt. Daniels; BCSO Lt. Shaw; BCSO and/or BCJ Officer Boras; BCSO and/or BCJ Sgt. Blackman; and BCJ Sgt. Stephan Nuanez (doc. 1 at 2–3).[1]  Plaintiff alleges that he was injured on October 30, 2008, during an incident that is part of a separate complaint (*id*. at 8). Due to his painful tailbone, Plaintiff asked for assistance in retrieving his morning tray (*id.*).  An unidentified officer refused to help him, so other inmates helped Plaintiff get his meal tray and return to his cell to eat (*id.*).  While he was eating on his bunk, two unidentified correctional officers ("CO's") came to his cell and harassed him by calling out, "Hey convict." (*id.*).  Plaintiff gave his tray to the officers when they told him he could not keep the tray at his bunk (*id.* at 9).  Plaintiff states that when he laid down to rest, the officer told him to stand up (*id.*).  Plaintiff told the officer he was unable to do so, and the officer responded by calling the "CERT" (certified

---

[1] The page references used in this Order reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned.

emergency riot team) (*id.*). Six to eight officers, including Lt. Shaw, pulled Plaintiff off his bunk in a rough and forceful manner, cuffed him behind his back, and shackled him (*id.*). Plaintiff appears to allege that Shaw and Officer Voras grabbed him by his hands and feet and carried him to medical as Plaintiff cried out in pain (*id.* at 10). Officer Nuanez heckled Plaintiff as this happened (*id.*). Plaintiff states that he was left, injured and without a mat or blanket, in one of the old abandoned medical cells from 5:45 a.m. until 11:00 a.m. (*id.*). By using the intercom in the cell, Plaintiff was able to briefly contact an unidentified female officer, but she refused to provide the help Plaintiff requested (*id.* at 10– 11). Shortly thereafter, Sgt. Blackman came and urinated in an adjoining cell and asked Plaintiff why he was in the cell, but also declined Plaintiff's request for a mat and blanket (*id.* at 11). Sgt. Daniels came in to talk to Plaintiff and make a report, and she noted Plaintiff's injuries and said she would try to have someone bring Plaintiff a mat and blanket (*id.*). Finally, at 12:30 p.m., an unnamed officer brought Plaintiff a lunch tray, a mattress, and a blanket and said he would try to get Plaintiff out of there (*id.*).

Around 3:00 p.m, Sgt. Bailey came to Plaintiff's cell to move him. Sgts. Russ and Bailey cuffed and shackled Plaintiff and led him slowly away from the cell while Sgt. Daniels filmed their actions (*id.* at 12). Plaintiff requested that Daniels ensure that his legal files and books were kept safe (*id.*) Despite his request that he be taken to medical, he was taken to solitary confinement (*id.*). Some of Plaintiff's personal property was brought to him later in the evening, although his reading glasses were broken and some of his files were destroyed or in disarray (*id.*). He complains that he did not receive plastic slide in shoes until three days later, and he claims that he stayed in disciplinary confinement without medical attention for twenty days (*id.*)

In his statement of claims, Plaintiff alleges that excessive force was used against him, causing unspecified additional injuries beyond those he had already sustained (doc. 1 at 13). He also claims that he was denied proper medical treatment, that he was placed in an unsanitized and inhumane environment for a nine-hour period, and he asserts that these acts were somehow intended to coerce him to plead guilty to false charges that were filed in September of 2005 (*id.*). He seeks court costs and legal fees, compensatory and punitive damages, and damages for negligence and intentional infliction of emotional distress and mental suffering (*id*).

One of the named Defendants is the Bay County Sheriff's Department. The capacity to be sued in federal court is governed by the law of the state in which the district court is located. Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) (citing Fed. R. Civ. P. 17(b)). As Plaintiff was similarly advised with respect to the Escambia County Jail, in Florida, there is no such legal entity as the "Bay County Sheriff's Department." Under Florida law, there are constitutionally created political subdivisions called counties and separately created constitutional officers, including a

sheriff. Fla. Const. art. VIII, §§ 1(a) and (d). However, no provision is made constitutionally or statutorily for a "Sheriff's Department" as a separate legal entity, as an agency of the county, or as a corporate entity; nor is a Sheriff's Department given authority to be sued in such a name. Bethel v. Escambia County Sheriff's Office, 2006 WL 3709621 (N.D. Fla. 2006) (citing Hobbs v. Holmes County Sheriff's Dep't, No. 5:04cv82/RH, Doc. 10 at 3 (N.D. Fla. July 14, 2004) (concluding that the Holmes County Sheriff's Department is not a suable entity); Turner v. Bieluch, No. 9:03cv81059, Doc. 12 (S.D . Fla.2004) (finding that Palm Beach County Sheriff's Office lacks capacity to be sued); Erickson v. Hunter, 1996 WL 427769, at *1 (M.D. Fla. Apr. 10, 1996) (unpublished opinion) (dismissing claims against Collier County Sheriff's Office on grounds that it lacks the capacity to be sued); Jones v. Collier County Sheriff's Dep't, 1996 WL 172989 (M.D. Fla. Apr. 9, 1996) (concluding that Collier County Sheriff's Office is not a legal entity and therefore cannot be sued)). For claims against a sheriff's department, the appropriate defendant is the Sheriff in his official capacity. *See* Bethel, 2006 WL 3709621 (citing Hobbs, No. 5:04cv82/RH, Doc. 10 at 3 ("For claims against the [Holmes County] Sheriff's Department, the appropriate defendant is the Sheriff, Dennis Lee, in his official capacity.")). Thus, the appropriate defendant would be the Sheriff in his official capacity. *See* Mitchell v. Untreiner, 421 F. Supp. 886, 888 (N.D. Fla. 1976) (referring to the sheriff as "the Chief Jailer" of the county jail).

To the extent Plaintiff seeks to hold Bay County responsible for the actions of the employees named or referenced in the complaint, he has not stated a claim. "[A] municipality cannot be held liable under § 1983 on a respondeat superior theory" for the actions of municipal employees. *See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Municipal liability under § 1983 only exists when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers." *Id.* at 694; *see also* Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir.2003) (stating that "municipalities may be held liable for the execution of a governmental policy or custom"); Davis v. DeKalb County School Dist., 233 F.3d 1367, 1375 (11th Cir. 2000) ("[R]ecovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality' that is, acts which the municipality has officially sanctioned or ordered.") (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 478, 106 S. Ct. 1292, 1298, 89 L. Ed. 2d 452 (1986)). To hold the municipality liable, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Snow ex rel. Snow v. City of Citronelle, AL, 420 F.3d 1262, 1271 (11th Cir. 2005) (quoting City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). In the instant case, Plaintiff does not allege that any of the Defendants were acting pursuant to a policy or custom of the BCJ or BCSO when

they allegedly violated his constitutional rights.  Therefore, he has failed to state a basis for liability as to Bay County.

Even if Plaintiff alleged Defendants' conduct violated the federal Constitution, the facts as presented fail to state a constitutional claim.  The Supreme Court has developed a two-part analysis governing Eighth Amendment challenges to prison conditions.  Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004).

> First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992).  The challenged condition must be "extreme."  *Id.* at 9, 112 S. Ct. at 1000.  While an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id.* at 35, 113 S. Ct. at 2481.  Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement].  It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id.* at 36, 113 S. Ct. at 2482.  The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] . . . of the minimal civilized measure of life's necessities." Rhodes [v. Chapman], 452 U.S. [337] at 347, 101 S. Ct. [2392] at 2399[, 69 L. Ed. 2d 59 (1981)].

Chandler, 379 F.3d at 1289–90.

> The second part of the two-part analysis is the "subjective component:"
>
> [T]he prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. Hudson, 503 U.S. at 8, 112 S. Ct. at 999 (marks and citation omitted).  The proper standard is that of deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991).  Negligence does not suffice to satisfy this standard, *id.* at 305, 111 S. Ct. at 2328, but a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result," Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994).  In defining the deliberate indifference standard, the Farmer Court stated: [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837, 114 S. Ct. at 1979.  Furthermore, the official may escape liability for known risks "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844, 114 S. Ct. at 1982–83.

Chandler, 379 F.3d at 1289–90. Plaintiff's description of his short-term placement in what he describes as a "condemned cell" do not appear to rise to the level of a constitutional violation.

Plaintiff appears to allege that some of the Defendants verbally harassed him, although it is unclear whether this is part of his constitutional claims. Harassment or verbal abuse does not rise to the level of a constitutional violation. *See* Edwards v. Gilbert, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (noting that verbal taunts, alone, are insufficient to state a constitutional violation); Hernandez v. Florida Dep't of Corrections, 281 Fed. Appx. 862, 866 (11th Cir. June 9, 2008) (holding that plaintiff's allegations of verbal abuse and threats by prison officials did not state a constitutional claim because the defendants never carried out the threats, and "verbal abuse alone is insufficient to state a constitutional claim"); *see also* Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (holding that dismissal of Eighth Amendment claim was proper where inmate alleged only that the "disrespectful and assaultive comments" denied him "peace of mind"); McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993) (holding that prisoner's allegations that prison staff harassed him generally did not state a constitutional violation); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993) (mere allegations of verbal abuse do not present actionable § 1983 claim); Swoboda v. Dubach 992 F.2d 286, 290 (10th Cir. 1993) (allegations that officers threatened to kill inmate not cognizable under § 1983); Ivey v. Williams, 832 F.2d 950, 955 (6th Cir. 1987) (holding that verbal abuse does not violate the Eighth Amendment); McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983) (holding that threatening language and gestures of a corrections officer do not generally violate an inmate's Eighth Amendment rights); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (holding that the sheriff's laughing at inmate and threatening to hang him did not violate the Constitution); Crenshaw v. City of Defuniak Springs, 891 F.Supp. 1548, 1555 (N.D. Fla. 1995) (holding that "verbal harassment and abusive language, while 'unprofessional and inexcusable,' are simply not sufficient to state a constitutional claim under Section 1983"); Munera v. Metro West Detention Ctr., 351 F. Supp. 2d 1353, 1362 (S.D. Fla. 2004) ("Verbal abuse and threats alone are not actionable as a matter of law."). Thus, any claims of verbal harassment are due to be dismissed.

"Section 1983 creates a private right of action for damages and injunctive relief against individuals and governmental bodies whose conduct under the color of state or local law deprives a plaintiff of rights, privileges, or immunities 'secured by the Constitution or laws.'" Arnold v. Board of Educ. of Escambia County, Ala., 880 F.2d 305, 310 (11th Cir. 1989) (quoting § 1983). In the instant case, Plaintiff does not identify a federal constitutional or statutory right that was allegedly violated with respect to each Defendant. He must do this in order to state an actionable claim under § 1983 against each Defendant. Any Defendant whose actions do not rise to the level of a constitutional or federal statutory law violation should be dismissed from this case.

Case No.:   5:11cv202/RS/EMT

In amending his complaint, Plaintiff should carefully review the foregoing to determine whether he can state a claim for relief against any of the named Defendants.  <u>If Plaintiff determines he does not wish to proceed with this case, he should file a notice of voluntary dismissal</u>.  If Plaintiff determines he wishes to proceed with this action, he must file an amended complaint clarifying his allegations.  Plaintiff shall completely fill out a new civil rights complaint form, marking it "**Amended Complaint**."  Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations.  Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Defendants" section of the form.  In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates of the alleged illegal acts.  In the section titled "Statement of Claims," Plaintiff must state what rights or statutes he contends have been violated by each Defendant, and he must provide reference to the facts supporting the claimed violations.  Finally, in the "Relief Requested" section, Plaintiff shall identify the form of relief he seeks from this court.  Plaintiff is advised that the amended complaint must contain all of his allegations because matters not raised in an amended pleading are deemed abandoned. N.D. Fla. Loc. R. 15.1.  However, matters that are addressed in a separate complaint should not be re-alleged in this case.

Plaintiff should file the amended complaint with an original signature and keep an identical copy for himself.  He should not file a memorandum of law or otherwise provide citations to statutes and cases, and he should not file a witness list or submit exhibits as evidentiary support for his complaint.  The court will notify Plaintiff when memoranda and exhibits are necessary, such as prior to trial or in conjunction with a motion for summary judgment.  Furthermore, Plaintiff should not submit service copies of his complaint unless and until the court directs him to do so.  Finally, Plaintiff is advised that discovery is premature at this stage of the case, and Plaintiff should not conduct any discovery without leave of court.

Accordingly, it is **ORDERED**:

1. The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use in actions under 42 U.S.C. § 1983.  This case number should be written on the form.

2. Plaintiff shall have **THIRTY (30) DAYS** in which to file an amended civil rights complaint, which shall be typed or clearly written, submitted on court form, and marked "**Amended Complaint**."  Alternatively, Plaintiff shall file a notice of voluntary dismissal within that time.

Case No.:  5:11cv202/RS/EMT

3.     Failure to comply with an order of the court will result in a recommendation of dismissal of this action.

**DONE AND ORDERED** this 25th day of August 2011.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**